IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| L.W., : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | |
| : | 7:20-CV-00114 (WLS-TQL) |
| KILOLO KIJAKAZI, : | |
| Acting Commissioner of Social Security, : | |
| : | |
| Defendant. : | |
| : | |

## ORDER

Plaintiff brought this social security appeal on June 11, 2020. (Doc. 1.) Thereafter, she filed the pending "Motion for Reversal or Remand." (Doc. 11.) After the motion was fully briefed, United States Magistrate Judge Thomas Q. Langstaff issued a Recommendation on August 5, 2021, recommending that the Social Security Commissioner's decision be reversed and remanded pursuant to Sentence Four of 42 U.S.C. § 405(g). (Doc. 15.) The Recommendation provided the Parties with fourteen days to file an objection to the Recommendation, and the Commissioner timely filed an Objection (Doc. 16). Pursuant to 28 U.S.C. § 636(b), the Court has made a *de novo* review of the findings to which an objection was properly made and has reviewed all other findings for plain error and manifest injustice. *United States v. Aponte*, 461 F. App'x 828, 830 n.2 (11th Cir. 2012); Fed.R.Civ.P. 72.

**I.    Brief Procedural History**

Plaintiff applied for disability insurance benefits on October 3, 2016, alleging disability since September 13, 2016. (*See* Doc. 10-2 at 16.) At that time, Plaintiff was thirty-seven years old and had two children. *See id.* at 25, 39. Plaintiff's claims were denied initially and upon reconsideration. *Id.* at 16. On April 12, 2019, an Administrative Law Judge ("ALJ") for the Social Security Commission denied Plaintiff's application for benefits upon finding that Plaintiff was not disabled and found that "considering the claimant's age, education, work experience, and residual functional capacity, the claimant was capable of making a successful

1

adjustment to other work that existed in significant numbers in the national economy." *Id.* at 26.[1] On April 13, 2020, the Social Security Appeals Council denied Plaintiff's request for review of the ALJ's decision denying her benefits, thereby making the Commissioner's decision final. *Id.* at 2-5.

Upon appealing to this Court, Plaintiff filed the pending motion for reversal or remand, asserting that the ALJ "improperly discounted treating physician opinion and other evidence that established that Ms. Woods had medically determinable conditions that prevented her from performing any sustained work activity." (Doc. 11-1 at 10.) Judge Langstaff apparently agreed, finding that the Commissioner's decision is not supported by substantial evidence and recommending that the Court reverse and remand the Commissioner's decision. (Doc. 15.) Specifically, Judge Langstaff finds that the ALJ's reasons for not fully crediting the opinions of treating physicians Dr. James Mossell and Dr. James Graham were not supported by substantial evidence, "are unsupported by the record, and based largely on the ALJ's opinions alone." (Doc. 15 at 7.)

The Commissioner objects and argues that an ALJ must evaluate medical opinions and should discount the opinions if they are not consistent with the medical or other evidence of record. (Doc. 16 at 2-3.) The Commissioner argues that even if the ALJ erred in some regards, the ALJ's findings were supported by substantial evidence and the ALJ did not err in finding the medical opinions inconsistent with Plaintiff's daily activities. *Id.* at 6-9.

## II. Discussion

### A. Legal Standard

Courts reviewing a social security disability case must determine "whether the ALJ applied the correct legal standards and whether the ALJ's decision is supported by 'substantial evidence.'" *Wright v. Barnhart*, 153 F. App'x 678, 682 (11th Cir. 2005) (citation omitted). This is a "highly deferential standard of review." *Powell v. Astrue*, 250 F. App'x 960, 963 (11th Cir. 2007). "[A] reviewing court may not substitute its judgment for that of the Secretary," "may not find facts 'anew,' [or] reweigh evidence." *Bowen v. Heckler*, 748 F.2d 629, 634 (11th Cir.

---

[1] *Bellew v. Acting Comm'r of Soc. Sec.*, 605 F. App'x 917, 930 (11th Cir. 2015) ("[T]he Commissioner has a limited burden at step five to show the existence of a significant number of jobs that the claimant can perform.") (citing 20 C.F.R. § 416.920(a)(4)(v)).

1984); *Wright*, 153 F. App'x at 683 (citation omitted). "Even if the evidence preponderates against the Commissioner's findings, [the court] must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel*, 631 F.3d at 1178 (11th Cir. 2011) (citation omitted). "In determining whether substantial evidence exists, [the Court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986)

"Testimony or an opinion of a treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Wright*, 153 F. App'x at 683-84 (citation omitted). Good cause exists where: "(1) the opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the opinion was conclusory or inconsistent with the doctor's own medical records." *Id.* (internal quotation marks and citation omitted). Furthermore, "[t]he ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." *Id.*

### B. Plaintiff's Contentions

As Plaintiff's counsel explains, because Plaintiff's date last insured for Title II benefits was December 31, 2016, "Ms. Woods would need to be found disabled on or before that date to be eligible for benefits." (Doc. 11-1 at 2.) Thus, the relevant period of disability in this case is September 13, 2016 through December 31, 2016. (*See* Doc. 8-2 at 18.) Plaintiff also argues that her alleged disability is due "primarily to psoriatic arthritis and fibromyalgia." *Id.* at 3. Plaintiff argues that the "medical evidence clearly shows that Ms. Woods was having disabling symptoms from her conditions prior to her date last insured," and Plaintiff points to the limitations she alleges in her Function Report, the limitations she alleges in a disability report dated November 3, 2016, Dr. Mossell's and Dr. Graham's conclusions that Plaintiff was disabled during the relevant period, Plaintiff's complaints and doctors' findings of worsening pain and fatigue in 2017, and the Teachers' Retirement System of Georgia's conclusion in May 2017 that Plaintiff was permanently disabled due to psoriatic arthropathy. (Doc. 11-1.)

### C. The ALJ's Findings

Here, the ALJ went through the required five-step evaluation process. *See* 20 C.F.R. § 416.912 (2005); *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

The ALJ found that Plaintiff "last met the insured status requirements of the Social Security Act on December 31, 2016" and that Plaintiff "did not engage in substantial gainful activity" from September 13, 2016 through December 31, 2016. (Doc. 8-2 at 18.) The ALJ found that through the date last insured, Plaintiff "had the following severe impairments: obesity, psoriasis with arthropathy including degenerative disc disease and degenerative disease of the hip, hands, knees and foot." *Id.* at 19. The ALJ found that Plaintiff also had other non-severe impairments, such as anxiety, depression and panic disorder, and hypertension which caused mild limitations. *Id.* at 19-20. The ALJ further found that following the period under review, the Plaintiff was diagnosed with fibromyalgia, which "was not a medically determinable impairment during the period under review." *Id.* at 20. Similarly, the ALJ concluded that a subsequent theorized diagnosis of carpal tunnel syndrome was "largely based on the claimant's subjective complaints" and was not medically determinable and that the Plaintiff's issues with irritable bowel syndrome were "not medically determinable during the purported period of disability" given that she had a normal colonoscopy in December 2016. *Id.*

The ALJ afforded significant weight to the opinions of state agency medical consultants Drs. Strayhorn and Rubin who, although they did not personally examine Plaintiff or review all of her evidence, opined that, *inter alia*, Plaintiff could lift and/or carry "10 pounds frequently with six hours of sitting and four hours of standing/and/or walking per day. . . ." (Doc. 8-2 at 23.) Therefore, the ALJ concluded that Plaintiff could perform light work "considering the mild deficits noted during examination, mild abnormalities shown on imaging studies and her own report of daily activities." *Id.* The ALJ also afforded significant weight to the opinions of state agency psychological consultants Drs. Hammonds and Jessee who opined that although Plaintiff had mild psychological limitations, "she was not otherwise limited in any functional area, which is consistent with the absence of significant symptoms present in the medical evidence of record during the period under review." *Id.*

However, the ALJ afforded little weight to the opinion of Plaintiff's mother because she is not medically trained and to the disability finding of the Teachers Retirement System of

4

Georgia because that entity "does use the Social Security Administration's standards for assessing disability." (Doc. 8-2 at 23.) The ALJ then explained that little weight was afforded to the opinion of Dr. Mossell, Plaintiff's rheumatologist who opined on July 26, 2017 that Plaintiff was permanently unable to work since December 2016. *Id.* at 24. The ALJ found this opinion "inconsistent with the objective evidence from the period under review and with the claimant's reports of her activities." *Id.* The ALJ then explained that Plaintiff had only "mild abnormalities" on her imaging studies and "mild degenerative changes" on her lumbar spine. *Id.* The ALJ also afforded little weight to Dr. Graham's opinion that Plaintiff needed long-term disability. *Id.* The ALJ found Dr. Graham's findings "inconsistent with the activities she describes in the Function Report" which "suggests that she is not as limited as she alleges[,]" that Dr. Graham's opinion that Plaintiff could not handle low-stress employment was not supported by record medical evidence, and that his opinions came in 2017, "after her symptoms increased in severity following her date last insured." *Id.*

Thus, the ALJ's findings and determination were largely based on the objective medical evidence of record from the period under review, the opinions of the state agency consultants, and Plaintiff's reported daily activities.

### D. Whether Substantial Evidence Supports the ALJ's Decision

#### 1. Plaintiff's daily activities

On the Function Report, dated December 6, 2016, Plaintiff explained that she could no longer teach because she could not stand or walk for long periods of time. (Doc. 8-6 at 20.) She then described her own daily activities of waking up her kids and taking them to school and normally resting in bed when she returns home "due to pain and fatigue." *Id.* at 21. She paced herself when doing household chores and said that vacuuming was painful. *Id.* She alleged that she helped her children by washing their cloths, helping with homework, and cooking about once weekly by making sandwiches or using the crockpot, as it did not required constant supervision. *Id.* at 21-22. When asked what household chores she was able to do and for how long, Plaintiff listed "mop, vacuum, mowing, pick up sticks, work in garden" and then wrote "do not do… my family does these tasks for me." *Id.* at 22. Her other activities included grocery shopping every two weeks while riding in an electric buggy, reading often, talking on

5

the phone, attending and singing at church once per week, and she had no issues with handling her finances or self-care, such as dressing, feeding, and bathing herself. *Id.* at 21-24.

The problem with Plaintiff's argument now is that it completely fails to consider the plethora of evidence in the record, including the evidence within Plaintiff's and her treating physician's own reports, all of which provide substantial evidence for the ALJ's conclusion that Plaintiff was not disabled as of December 31, 2016. For example, Plaintiff contends:

> [T]he ALJ **does not specify** what aspects of the Function Report are somehow inconsistent with Dr. Mossell's opinion. Rather, the ALJ simply states "See Function Report Exhibit 4E noting tasks she is able to perform". A plain reading of the Function Report clearly demonstrates that the ALJ's reliance on that document is erroneous and warrants a remand of this claim.

(Doc. 11-1 at 16.) The Court disagrees; a plain reading of the Function Report reveals various tasks that Plaintiff could and did perform. Although Plaintiff alleged various limitations in her daily activities in her Function Report, she also participated in various activities such as cooking, cleaning, doing laundry, and helping her children, albeit with assistance, as well as singing weekly at church, driving herself and her children alone most days, and bathing, dressing, and caring for herself, all without any alleged limitations or difficulty. (Doc. 8-6 at 20-24.) On good days, she could walk 75 feet before needing to rest for 30 seconds to 1 minute, and she could then resume walking. (Doc. 8-6 at 25.) She handled changes in routine "farely [sic] well" and did not use a cane, crutches, walker, or any other assistive device except for reading glasses. *Id.* at 26. Numerous courts have affirmed an ALJ's finding that a claimant was not disabled where the claimant was engaged in similarly daily activities. *See*, *e.g.*, *Bellew v. Acting Comm'r of Soc. Sec.*, 605 F. App'x 917, 929 (11th Cir. 2015) (affirming ALJ's finding because, *inter alia*, the "ALJ was entitled to consider [claimant's] daily activities when evaluating [claimant's] subjective symptoms");[2] *Tackett v. Comm'r, SSA*, No. 3:19-cv-1356-HNJ, 2020 U.S. Dist. LEXIS 130807, at *28-29 (N.D. Ala. July 24, 2020) (Where the claimant "cares for all her own personal

---

[2] *Cf. Morales v. Comm'r of Soc. Sec.*, 799 F. App'x 672, 678 (11th Cir. 2020) (not agreeing "with the ALJ's finding that Morales's ability to perform basic housework, clean, bathe, and dress herself was itself inconsistent with a disabling level of pain" but still affirming the decision because the other evidence was not consistent with the alleged severity of Plaintiff's symptoms). However, "[u]npublished cases do not constitute binding authority and may be relied on only to the extent they are persuasive." *Searcy v. R.J. Reynolds Tobacco Co.*, 902 F.3d 1342 (11th Cir. 2018).

needs, including dressing herself, driving, shopping, and doing some housework . . . . when combined with the other evidence of record, the ALJ['s] conclu[sion] [that] the activities undermined Tackett's subjective complaints . . . found support both in applicable law and in the record evidence."); *Furlow v. Comm'r of Soc. Sec.*, No. 2:12-cv-203-Ftm-DNF, 2013 U.S. Dist. LEXIS 117114, at *28-30 (M.D. Fla. Aug. 19, 2013) (finding "substantial support in the record for the ALJ's determination that Plaintiff was not credible" where "Plaintiff testified that she goes shopping, can lift a gallon of milk, does house work, irons and launders clothing, and is able to drive. Plaintiff dresses herself, bathes without assistance, shops and prepares meals, and cleans her home at her schedule" even though she may need to rest after some of these activities); 20 C.F.R. § 404.1529(c)(3)(i) (An ALJ may consider a claimant's daily activities in evaluating the limiting effects of her impairments). Thus, the Court finds no error in the ALJ's treatment or consideration of Plaintiff's Function Report and alleged daily activities, which, taken together with the other evidence of record, provide a reasonable basis for the ALJ's determination.

**2. Treating Physician's records and opinions**

In late 2015 through January 2016, Dr. Graham's notes indicated that Plaintiff had complained of migraine headaches, fatigue, and anxiety. (Doc. 8-7 at 24-31.) Dr. Graham's diagnostic assessments at these visits included depression, anxiety, headache, obesity, and benign essential hypertension. *Id.* His recommendations included low sodium diet, continuing diet and exercise, and continuing certain medications and starting a new medication. *Id.* At an office visit on March 28, 2016, Dr. Graham noted that Plaintiff was complaining of pain in joints and swelling in hands. (22.) He wrote "has developed stiffness in joints-present for years but has worsened pain w raising arms* hands stiff and painful w writing," and he recommended that she be referred to Dr. Mossell in rheumatology. *Id.* On August 25, 2017, another doctor to whom Plaintiff had been referred by Dr. Graham, wrote that Plaintiff had "previously been diagnosed with fibromyalgia" and has "really severe complaints that are fairly diffuse." (Doc. 8-7 at 384.) He stated that Plaintiff's MRI showed "nothing terribly severe or nothing that seems to really correlate with her symptoms" and that Plaintiff was "lacking a specific diagnosis at this point." *Id.* The following month, Dr. Graham wrote a note that he agrees with Rheumatology and that Plaintiff "needs longterm disability." *Id.* at 387.

On the "Attending Physician Statement" for a disability claim form, Dr. Mossell (of the Arthritis and Osteoporosis Center) wrote that he had been treating Plaintiff for psoriatic arthropathy and that as of December 5, 2016, she was unable to work due to this condition. (Doc. 8-7 at 265.) He checked the boxes indicating that Plaintiff could occasionally sit, stand, walk, do fine finger movements, and lift up to ten pounds. *Id.* On a form signed on October 4, 2016, Dr. Mossell indicates the same findings and confirms that Plaintiff was continuously disabled from September 13, 2016 through December 13, 2016. *Id.* at 269. Additionally, Dr. Mossell noted on May 10, 2016 that Plaintiff had been referred to him from Dr. Graham, and that Plaintiff had generalized fatigue, pain and swelling in hands, knees, feet, and elbows, and that she had headaches and morning stiffness lasting fifteen minutes. *Id.* at 272. Dr. Mossell's May 10, 2016 scans of Plaintiff's hands revealed joint space narrowing and "mild erosive changes" in both hands and "[e]vidence of arthritic change." *Id.* at 337. The May 10, 2016 hip scans revealed "mild degenerative changes" on both acetabula. *Id.* at 339. A March 2017 MRI revealed several "unremarkable" and "normal" discs, although three disks had "mild" ridging and/or "mild" narrowing. *Id.* at 351-54.

Courts considering facts and opinions similar to those here have concluded that the ALJ did not err in giving less weight to certain treating physicians' opinions and have affirmed the finding that the plaintiff was not disabled. In *Wright*, the objective test results indicated either normal or "mild" abnormalities, one physician opined that Wright was overstating his symptoms, and the ALJ accorded less weight to two treating physicians' opinions as "inconsistent with their own clinical findings, objective tests, and the examinations they performed." 153 F. App'x at 684. The Eleventh Circuit found that this constituted "good cause" to assign less weight to their opinions and affirmed the decision, holding that "[t]he record reveals evidence that would lead a 'reasonable person' to agree with the ALJ's conclusion." *Id.* at 683-84 (citation omitted); *see also Horowitz v. Comm'r of Soc. Sec.*, 688 F. App'x 855, 863 (11th Cir. 2017) ("[B]ecause there are no objective findings—such as evidence that she had ineffective ambulation or abnormal gait—to corroborate her account about the symptoms and pain in her right leg, substantial evidence supported the ALJ's credibility determination."); *Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317, 1330 (11th Cir. 2020) (finding that "[s]ubstantial evidence supports the ALJ's conclusion because the medical evidence in this case, including physical

8

examinations and diagnostic imaging . . . showed that [plaintiff] experienced only mild limitations due to his back and knee pain and thus had a residual functional capacity that would allow him to perform sedentary work with certain restrictions").

Indeed, "[o]bjective medical evidence 'is a useful indicator' to assist the Commissioner in evaluating the intensity and persistence of symptoms and pain." *Morales*, 799 F. App'x at 677 (concluding that the ALJ's credibility determination was supported by substantial evidence where "the ALJ noted that [plaintiff] underwent numerous forms of imaging with unremarkable results[]," the ALJ gave little weight to various doctors' conclusions of disability, and "gave great weight to the agency experts") (citing 20 C.F.R. § 404.1529(c)(2)). Here, the ALJ afforded little to Dr. Mossell's opinion specifically because his findings were "inconsistent with the objective evidence from the period under review and with the claimant's reports of her activities," the imaging studies "show no more than mild abnormalities," the MRI "showed mild degenerative changes," and "[n]erve conduction testing was negative." (Doc. 8-2 at 24.) The ALJ similarly found the findings of Dr. Graham inconsistent with Plaintiff's daily activities and the other evidence of record. *Id.* Thus, the Court finds no error in the ALJ's affording of little weight to the opinions of Drs. Mossell and Graham. *Fairbrother v. Comm'r of Soc. Sec.*, No. 6:17-cv-1306-Orl-DCI, 2018 U.S. Dist. LEXIS 128855, at *22-23 (M.D. Fla. Aug. 1, 2018) (affirming Commissioner's decision where the ALJ "repeatedly described those MRI findings as mild and stated that those objective medical records supported the RFC" and finding no error in assigning "little weight" to a doctor's "extremely restrictive functional limitations," which were "unsupported by and inconsistent with the medical record as a whole").

Additionally, the ALJ did not give much weight to the treating physicians' findings in 2017, when Plaintiff's condition had apparently worsened, and the Court finds no error in that treatment. In a visit later in 2017, Dr. Mossell noted that Plaintiff was in significant pain all over, had nausea, and used a cane at times. (Doc. 8-7 at 341.) Likewise, on a "Physical Residual Functional Capacity Questionnaire" dated December 2017, Dr. Graham wrote that Plaintiff had fibromyalgia and psoriatic arthropathy and concluded that Plaintiff "is unable to work any job. Severe disability. . . . Must have help from family with dressing, bathing, cleaning,

9

cooking." (Doc. 8-8 at 120.)³ This Court agrees with its sister courts who have concluded that "[w]hile a retrospective opinion can prove the existence of a disability, the retrospective opinion must refer clearly to the relevant period of disability." *Carter v. Astrue*, No. 3:02-cv-1154-J-TEM, 2008 U.S. Dist. LEXIS 86030, at *24 (M.D. Fla. Sep. 30, 2008); *Jamiah v. Astrue*, 2010 U.S. Dist. LEXIS 50396, 2010 WL 1997886 at *21 (N.D. Ga. 2010) ("Where, as here, the treating physicians offer opinions after the disability insured period has ended, and where such opinions do not relate back to the dates insured, 'the ALJ may give little weight to [the] opinion.'").

### 3. Other Evidence

As Plaintiff's counsel argues, Plaintiff's symptoms included daily pain, daily fatigue, and sometimes insomnia. (Doc. 11-1 at 8; Doc. 8-6 at 21.) "In order to show disability based on pain, a claimant must show an underlying medical condition and either (1) objective medical evidence confirming the severity of the alleged pain arising from that condition or (2) that the medical condition is severe enough that it can reasonably be expected to give rise to the alleged pain." *Morales*, 799 F. App'x at 676. Neither standard was met here.

Moreover, in addition to the mild and normal findings of the MRIs and imaging tests alluded to above, the state agency medical doctors and psychologists also concluded that Plaintiff had mild limitations and could perform various tasks. (Doc. 8-2 at 23.) Thus, the ALJ afforded significant weight to these opinions which were consistent with the other evidence of record and concluded that Plaintiff could perform light work. *Id.* Substantial evidence supported this determination. *See, e.g.*, *Jarrett v. Comm'r of Soc. Sec.*, 422 F. App'x 869, 874 (11th Cir. 2011) (*per curiam*) (finding that substantial evidence supported an ALJ's decision to afford weight to state agency consultants despite plaintiff's allegation that their conclusions were contradicted by a physician's assessment, where the ALJ discredited the physician's assessment because it was inconsistent with the record as a whole); *Knight v. Astrue*, No. CV 311-096, 2012 U.S. Dist. LEXIS 184751, at *34-35 (S.D. Ga. Dec. 20, 2012) (finding no error in where ALJ

---

³ However, parts of the form were left blank, such as whether Plaintiff needs a cane or assistive device and whether Plaintiff has significant limitations in doing repetitive researching, handling, or fingering. *Id.* at 118-119.

afforded less weight to one opinion because it was inconsistent with the objective medical evidence and affording more weight to the state agency psychologists' opinions).

The ALJ also specifically addressed the Teachers Retirement System conclusion in May 2017 that Plaintiff was disabled, and the ALJ afforded this conclusion less weight because the Teachers Retirement System has different standards for assessing disability. (Doc. 8-2 at 23.) Plaintiff raised no further argument or objection as to this finding, and the Court finds no plain error in it. *See Hacia v. Comm'r of Soc. Sec.*, No. 8:13-cv-1257-T-33MCR, 2014 U.S. Dist. LEXIS 80211, at *16-17 (M.D. Fla. May 14, 2014); *Brewer v. Colvin*, Civil Action No. 4:12-CV-00542-RDP, 2013 U.S. Dist. LEXIS 175253, at *17 (N.D. Ala. Dec. 10, 2013).

Furthermore, the ALJ relied on the vocational expert's testimony that a person with Plaintiff's age, education, work experience, and residual functional capacity who was restricted to performing work at the sedentary level could perform the requirements of various representative unskilled sedentary occupations that existed in large numbers nationally. (Doc. 8-2 at 26.) This determination, though not specifically challenged, was also supported by substantial evidence and was not plain error.

Finally, although Plaintiff argues that additional evidence submitted to the Appeals Council warrants remand of her claim (Doc. 11-1 at 12), "when the Appeals Council has denied review, [appellate courts] will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Wright*, 153 F. App'x at 684. New evidence need only be considered when it is "chronologically relevant," meaning that it "relates to the period on or before the date of the administrative law judge hearing decision" or "relate[s] back to a time on or before the ALJ's decision." *Stone v. SSA, Comm'r*, 658 F. App'x 551, 553 (11th Cir. 2016) (citations omitted). New evidence must be "relevant and probative so that there is a reasonable possibility that it would change the administrative result." *Id.* Plaintiff has not specified what the new evidence is or shown how it would meet these standards. Thus, the Court finds the purported new evidence not probative for this appeal.

For the foregoing reasons, the Court finds that the ALJ's decision was supported by substantial evidence and that no error was made warranting reversal or remand.

11

## CONCLUSION

Upon full review and consideration of the record, the Court finds that Judge Langstaff's Recommendation (Doc. 15) should be, and hereby is **NOT ADOPTED** for reason of the findings made and conclusions reached herein. For the same reasons, Plaintiff's Motion to Remand (Doc. 11) is **DENIED**, and the Commissioner's Objection (Doc. 16) is **SUSTAINED**. It is hereby **ORDERED AND ADJUDGED** that Plaintiff shall take nothing by her Complaint (Doc. 1), and **JUDGMENT** shall be entered in favor of the Commissioner.

**SO ORDERED**, this  8th  day of September 2021.

            **/s/ W. Louis Sands**
            **W. LOUIS SANDS, SENIOR JUDGE**
            **UNITED STATES DISTRICT COURT**